IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EXELON GENERATION COMPANY, LLC　　:　　CIVIL ACTION

　　　　　　vs.　　　　　　　　　　　:

TUGBOAT DORIS HAMLIN, et al　　　　:　　NO.  06-0244

O'NEILL, J.　　　　　　　　　　　　　　　　MAY  27,  2008


<u>MEMORANDUM</u>


On January 19, 2006, plaintiff commenced this action by filing a complaint against defendants, Vane Line Bunkering, Inc., the tugboat DORIS HAMLIN, in *rem*, and the barge VB-42, in *rem*.

Plaintiff alleges that it is the owner and operator of a power generating station located on the Delaware River in Eddystone, Delaware County, Pennsylvania; that on January 23, 2004, the tugboat was pushing the barge toward a dock at the Eddystone Plant; and that the propeller wash from the tug caused river bottom debris to clog the underwater filters of the cooling water intake system at the Plant causing damage.

Plaintiff asserts two causes of action, Count I for negligence and Count II for indemnity.  With respect to Count II, plaintiff alleges that on September 27, 1996, it entered into a contract of affreightment with Vane.  Plaintiff alleges that the terms of the contract require Vane to indemnify plaintiff for cost of repair and loss of revenue it sustained as the result of the alleged damage to the Eddystone Plant and for attorney's

fees and costs incurred in this action.

Before me now is defendant Vane's fully briefed motion for summary judgment as to Count II.   The indemnity clause of the contract at issue provides in part:

Clause 1.11 - Indemnity

The supplier [Vane] agrees to indemnify, hold harmless and defend the company [plaintiff], and its officers, employees, agents and representatives from and against...

Clause 1.11.2

Any claim, demand, cause of action, loss, expense or liability on account of injury to or death of persons (including the employees of the company, the suppliers and the suppliers' subcontractors and supplies) or damage to or loss of property (including the property of the company) arising directly or indirectly out of the acts or omissions to act of the supplier or his subcontractors, suppliers or agents, ... irrespective of whether the party to be indemnified was concurrently negligently, actively or passively and including any expenses and attorneys fees incurred by the company for legal action to enforce suppliers' indemnification obligations under this section, but excepting where the injury or death of persons or damage to loss of property was caused by the sole negligence or willful misconduct of the parties to be indemnified.

The contract provides that it is to be "governed by and construed in accordance with" the law of Pennsylvania and that it is to be "consistent with United States Maritime law."  The contract also provides: "Governing Law.  The purchase order shall be construed under the laws of the Commonwealth of Pennsylvania as if executed and to be performed wholly within the Commonwealth of Pennsylvania."

Defendant asserts that the indemnity provision applies only to claims asserted against plaintiff by third parties.  Plaintiff asserts that the provision requires that Vane indemnify plaintiff for both third party and direct first party claims.

2

Pennsylvania courts require that an indemnity agreement be strictly construed against the party asserting it[1] and that if an agreement is ambiguous it is to be construed "most strongly" against the party who drafted it.  Kiewit Eastern Co., Inc. v. L & R Const. Co., Inc., 44 F.3d 1194, 1202-3 (3d Cir. 1995).  It is not disputed that plaintiff drafted the agreement at issue.  The intent to indemnify for the particular claim must be clear from the terms of the agreement.  Bethlehem Steel Corp. v. MFTX, Inc., 703 A. 2d 39, 43 (Pa. Super. 1997).  Kellers System, Inc. v.  Transport International Pool, Inc., 177 F. Supp. 2d 992, 998 (N.D. Ill. 2001) (applying Pennsylvania Law).

I am not able to conclude that an intent to indemnify plaintiff is clear from the language of the agreement; rather a common sense reading of the language suggests that it refers only to third party claims.  The agreement states that "the supplier agrees to indemnify, hold harmless and defend the company from and against... any claim..."  It further states (1.12) that "if any action and procedure brought against the company is based on a claim of infringement of a proprietary or intellectual right or interest" additional provisions apply; thus confirming that the prior paragraphs of 1.11 apply only to third party claims.

Plaintiff's principal argument is that the word "indemnity" taken by itself broadly encompasses any loss plaintiff may have suffered and that the word is not restricted to third party claims simply because it is followed by the words "hold harmless and defend."

---

[1] I need not and do not apply this principle in order to dispose of the pending motion as I conclude that the provision at issue clearly covers only third party claims and it does not clearly and unambiguously establish the right asserted by plaintiff.

3

While several cases perhaps may be read as supporting plaintiff's argument[2] I am

persuaded by the reasoning in Longport Ocean Plaza Condominium, Inc. v. Robert Cato

& Associates, Inc., et al. 637 Fed. App, 464, 466-7, 2005 US App. Lexus 11170.[3]

> We agree with Cato that neither indemnity clause unambiguously requires it to reimburse Longport for fees and costs in Longport's own action against Cato.  While each clause is broadly worded, referring to indemnification "[t]o the fullest extent permitted by law" for "any and all liability," this language can sweep only as far as the word on which it hinges.  That hinge is the word "indemnify."  Although this word can imply any right to reimbursement, it commonly presumes a tripartite arrangement, in which A recovers from B for losses to C.  See Black's Law Dictionary 784 (Bryan A. Garner, ed. in chief, 8th ed. 2004) (defining indemnity as "esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party"); 41 Am.Jur.2d Indemnity § 1 (1995)(giving a similar definition).
>
> Case law confirms the currency of Cato's definition.  In Valhal Corp. v. Sullivan Associate Inc., we explained that an indemnity clause requires the indemnitor "to bear the cost of any damages for which the indemnitee is held liable." 44 F.3d 195, 202 (3d Cir. 1995) (emphasis added); accord Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 159 A.2d 97, 110 (1960) ("[Indemnity] is a right which enures to a person who, without active fault on his own part, has been compelled, by reason [of] some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." (quoting Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A. 2d

---

[2]Vane points out that in five of those cases (pp. 6-7 of Reply Brief) the word "defend" does not appear in the contract language and plaintiff does not dispute this assertion.

[3]I recognize that Longport is not binding upon me because it was non-precedential and because it was decided under New Jersey law; nor is it binding on the Court of Appeals because it was not circulated to the full Court before filing.  Nevertheless, I believe I am free to adopt its reasoning particularly because it depends upon definitions of "indemnity" taken from Black's Law Dictionary and Am.Jur.2d. and does not rely on some peculiarity of New Jersey law.

368, 370 (1951))); see also <u>Lee Way Motor Freight, Inc. v. Yellow Transit Freight Lines, Inc.</u>, 251 F.2d 97, 99 (10th Cir. 1957) (explaining that indemnity "implies a primary liability in one person, although a second person is also liable to a third party"); <u>Strong v. Prince George's County</u>, 77 Md. App. 177, 549 A.2d 1142, 1144 (Ct. Spec.App.1988) ("Indemnification is an agreement to reimburse one who has been held liable for the amount of his loss."); <u>AMI Ins. Agency v. Elie</u>, 394 So.2d 1061, 1062 (Fla.Dist.Ct.App.1981)(same).  This definition presumes an obligation to a third party that triggers the indemnitor's obligation to the indemnitee.

Although the word may sometimes have the broader meaning championed by <u>Longport</u>, that meaning does not emerge unambiguously from its contracts with Cato.  In fact, the surrounding language tends to undermine <u>Longport's</u> reading.  The contracts require Cato not only to indemnify <u>Longport</u> but also to "hold [it] harmless."  A hold-harmless term normally requires one party to "'assume [ ] the liability inherent in the undertaking, thereby relieving the other party of the responsibility.'" <u>Valhal, 44 F.3d at 202 n.6</u> (quoting <u>Blacks Law Dictionary</u> 658 (5th ed.1979)). <u>Longport</u> has failed to explain how it could be "h[e]ld harmless" in its own action against Cato.  This wrinkle in the language suggests that the agreements contemplate indemnification only when <u>Longport</u> defends a third party's lawsuit.

Plaintiff asserts that the cases cited by Vane supporting liability only for third party claims are inapplicable because they are confined to situations where a party seeks indemnification for its own negligence.  I note, however, that <u>Longport</u>, supra, does not fall into this category as it was a suit by a condominium developer against a builder for breach of a construction management contract and plaintiff sought reimbursement for attorneys fees and costs it had incurred in its action against the builder for breach of the contract.

Finally, plaintiff asserts that where state law conflicts with a fundamental principle of maritime law the latter will prevail.

In my view, there are two responses to this.

First, plaintiff concedes that maritime law does not control if the dispute is inherently local.  It seems to me that when the claim is that a barge being towed toward a berth on the Delaware damages a water intake system for a river bank power station the dispute fairly can be characterized as inherently local.

Second, plaintiff contends that when interpreting a maritime indemnity contract general contract principles ("the principles of the common law of contract that are in force in most states") apply and that if the terms of the agreement are clear and unambiguous they must be enforced as written.  These principles are identical to the ones I have applied.

I conclude that the indemnity provision at issue clearly covers only third party claims.  If not, it is at best ambiguous, the ambiguity to be resolved against plaintiff, the drafter.[4]   What is clear to me is that the indemnity provision does not clearly and unambiguously establish the right to indemnity which plaintiff asserts.

An appropriate order follows.

_____

[4]If there is an ambiguity, the words "property of the company" and "from and against," relied on by plaintiff, contribute to the ambiguity rather than eliminating it.  My colleague Judge Katz was right on the money when, nineteen years ago, he characterized language identical to that at issue in this action as "not a model of clarity" and a "dense thicket." Philadelphia Electric Co. v. Nationwide Mutual Insurance Co., 721 F. Supp. 740, 743 (E.D. Pa. 1989).